## WILSON v. CALCULAGRAPH CO.

(Circuit Court of Appeals, First Circuit. February 21, 1906.)

### No. 565.

PATENTS—INFRINGEMENT—TIME-RECORDING MACHINES.

The Hamilton patent, No. 424,291, claim 1, for a machine for recording measurements of time, and the Abbott patent, No. 583.320, for a calculagraph which embodies in a single machine the Hamilton device and one for recording the time of day, used specifically in timing long distance telephone messages, construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 132 Fed. 20.

J. Stewart Rusk and Frederick L. Emery, for appellant.
Edwin J. Prindle, for appellee.

Before COLT, PUTNAM, and ALDRICH, Circuit Judges.

COLT, Circuit Judge. This is an appeal from the Circuit Court upon a bill brought for the infringement of the first claim of the Hamilton patent, No. 424,291, bearing date March 25, 1890, and the first and second claims of the Abbott patent, No. 583.320, bearing date May 25, 1897. Both patents relate to time-printing machines.

The Hamilton patent is for a printing apparatus for recording measurements of time. The Abbott patent is for a printing apparatus for recording both measurements of time and the time of day. The Abbott apparatus is called the Calculagraph, and it embodies the combination of the Hamilton device and the old time-stamp.

Time-printing machines may be described in general terms as comprising a printing platen, printing dies resembling the face of a clock, and ordinary clock mechanism arranged to rotate the dies. In the operation of printing, the card is placed between the platen and the dies, and the platen is depressed, thereby causing the dies to make an imprint upon the card.

Time-printing machines may be divided into two classes, those for recording the time of day, and those for recording measurements of time, or the interval of elapsed time between the beginning and the end of an occurrence. It is apparent, upon reflection, that there is a wide difference in the conception which underlies these two types of machines. The conception of the time of day and the conception of the measurement of a portion of the period of time which constitutes a day are essentially distinct. One relates to some moment of time during the 24 hours which constitute a day, and the other relates to a measurement of some portion of the 24 hours independently of the time of day. Of course, we may picture in the mind two different times of day, and by the mental process of subtraction compute the measurement of the interval between these two times. This, however, is a mere incident which only tends to confuse the mind, and does not in any way alter the fundamental distinction between the two conceptions. From this difference of conception, it follows that the printed record of the time of day, or the two printed records of different times of day from which a period of time may be computed, are different from the printed record which shows directly and instantly the measurement of a period of time. From this difference of conception it also follows that time-printing machines for recording the time of day are different in construction and mode of operation from time-printing machines for directly recording measurements of intervals of time.

The best illustration of a time-printing machine for recording the time of day is the machine of the Emerson patent, No. 224,666, dated February 17, 1880, known as the old time-stamp. In this machine there is the printing platen, and printing dies resembling the face of a clock. The printing dies comprise an outer annular die with figures or characters arranged in a circle like a clock dial, the two pointer dies located within this circle, corresponding to the hour and minute hands of a clock. The outer die is stationary, and the two pointer dies are rotated by ordinary clock mechanism just the same as the hands of a clock. Since the printing operation requires that all the dies should lie in the same horizontal plane, the hour-hand die is made in the shape of a small triangle, thereby permitting the hands to pass or cross each other during their revolution.

The purpose of the old time-stamp is to indicate the hour and minute the impression is made. The specification of the Emerson patent says:

"My invention relates to certain improvements in that class of stamps which are employed for marking, dating, canceling, or otherwise impressing various documents, and at the same time indicating the hour and minute at which such impression is made."

Undoubtedly the old time-stamp may be utilized for the purpose of computing a period of elapsed time by making two imprints, the first at the beginning of the period, and the second at the end of the period, as illustrated in the following diagrams:

Elapsed Time, 17 minutes.

By placing guides on the base of the old time-stamp, so that the card will occupy the same position relatively to the printing mechanism when the second imprint is made, it may also be used to print two superimposed impressions for the purpose of computing a period of elapsed time, as appears by the following diagram:

Elapsed Time 17 minutes.

Previous to the Hamilton patent in suit there existed in the art no time-printing machine for directly measuring and recording elapsed time in the same way as the old time-stamp records the time of day. The solution of this problem was not free from difficulties. In the old time-stamp, to print a record of the time of day we have simply to make a single imprint. In an elapsed-time machine, to print a record of elapsed time we must make two superimposed imprints, one at the beginning of the interval and the other at its close. It is comparatively easy to make a single imprint which is certain and intelligible. It is quite a different thing to make a certain and intelligible record of two superimposed imprints. In an elapsed-time machine, we must first make certain which of the two arcs of the circle represents the measure of elapsed time, and, having done this, we must next make the two superimposed imprints present an intelligible record.

As an illustration of the first difficulty to be overcome, suppose, for example, we start with an old stationary clock-face die carrying a circle of numerals-type and a minute-hand die rotated by clock mechanism. It is apparent that the two imprints from these dies will not indicate with any certainty an interval of time. For illustration, suppose the first imprint, at the beginning of the interval, shows the hand pointing at the five-minute numeral, and the final imprint at the close of the interval shows the hand pointing at the 30-minute numeral, it is evident, upon looking at the two positions of the hand upon the record, that we cannot tell which of the two arcs represents the measure of elapsed time; in other words, we cannot tell whether the elapsed time is 25 minutes or 35 minutes. This first difficulty may be overcome by the construction of a die which will show which imprint is made first. If, for instance, we make a single rotating die carrying a series of numerals-type and a pointer-type, which points to the beginning of the series, the first of the two imprints will be the imprint where the pointer points to the beginning of the series, and the elapsed time will be represented by the arc between this position of the pointer and its position on the final imprint. This, however, is only the first step in the solution of the problem, for we are now met with another difficulty, namely, the printing of two superimposed imprints from this die which will present an intelligible record of the elapsed time. While the initial imprint of this die will show a clear record of the beginning of the interval, the final superimposed imprint, if the rotating numerals are again printed, and thereby superimposed upon the first imprint, will produce a confused record. Having devised a proper form of die, the problem still remains of printing from that die a final record which is intelligible. At this stage of the invention, therefore, it becomes necessary to devise a printing mechanism which will make a final record which is readable. This may be accomplished by omitting to print the numerals a second time; in other words, by a printing mechanism so arranged that the pointer alone is printed at the final imprint. Thus we have solved the entire problem by first devising a die whose imprint will always indicate the arc which is the measure of the elapsed time, and then by devising a printing mechanism in which the numerals and the pointer may be printed separately or independently. It was in this way that Hamilton solved the problem of an elapsed-time printing machine.

The Hamilton apparatus consists, first, of an integral rotating die provided with an annular series of scale of numerals-type and a pointer-type within the series which points to the beginning of the scale or the zero numeral; and, second, of two independent printing platens, one co-operating with the numerals-type, and the other co-operating with the pointer-type. At the beginning of the period of time which it is desired to measure and record, both the platens are depressed, thereby making an imprint of both the numerals-type and the pointer-type, as illustrated in the following diagram:

*Fig. 1. Hamilton Initial Imprint.*

At the close of the period of time the pointer-platen alone is depressed, thereby making a final imprint of the pointer-type only, as illustrated in the following diagram:

*Fig. 2. Hamilton Final Imprint.*

During the interval of time between the initial and final imprints, as illustrated by Fig. 2 of these diagrams, the rotating die has traveled the arc of the circle included within the two positions of the pointer, beginning with the zero numeral and ending with the 80 numeral; and, if these numerals represent divisions of time into minutes, it is apparent that the period of elapsed time is 80 minutes, since the pointer on the final imprint points to this numeral.

These diagrams correspond to Figs. 6 and 7 of the Hamilton patent. With respect to the first imprint, it is, of course, immaterial whether or not we print the pointer, since the zero numeral always indicates the beginning of the arc which represents the interval of elapsed time. The essential feature in this printing mechanism is that the numerals-type should be printed only once; in other words, one of the two imprints must be limited to printing the pointer alone. The reason for this is obvious, for, if the numerals-platen was depressed in making the final imprint, we should have a confused and unintelligible record. We should have one imprint of the numerals in one position, corre-

sponding to the position of the rotating die at the beginning of the interval, and a second superimposed imprint of the numerals in another position, corresponding to the position of the rotating die at the close of the interval. For example, in the above final imprint, if the numerals-platen had also been depressed, we should have had the zero numeral superimposed upon the numeral 80, the 10 numeral superimposed upon the numeral 70, and so on through the entire series.

These observations show that the Hamilton invention resides, first, in the form of the die; and, second, in the idea of a separate or independent printing from a portion of the die.

Coming now to the defendant's apparatus, we find that it consists of a minutes elapsed-time mechanism and a seconds elapsed-time mechanism. It also embraces parts which are immaterial to our present inquiry, namely, a time of day mechanism comprising an outer stationery die with clock figures and an hour pointer-hand.

The minutes elapsed-time mechanism comprises, first, a single rotating die carrying type in the form of a semicircular series of graduations, the graduations at the end of each group of five units being longer than the rest, and a pointer-type within the series which points to the beginning of the series; and, second, a single printing platen which co-operates with the entire die in making the imprint.

The seconds-hand mechanism comprises, first, a stationary die carrying type in the form of a complete circle of graduations like the seconds disc of a watch, and within this circle a rotating pointer-die; and, second, two printing platens so arranged that the larger platen prints the circle of graduations and a portion of the pointer at the first imprint, and the larger platen, together with the smaller platen, prints the circle of graduations and the whole of the pointer at the second imprint.

The following diagram represents the beginning of an interval of time in defendant's machine, or the first imprint, which is made by forcing the large platen upward against the dies:

Elapsed Time, 17 min., 2 sec.

At the close of the interval, the large platen is again forced upward, together with the small seconds-hand platen; the large platen making an entire superimposed impression of the first imprint, and the small platen printing the remainder of the seconds pointer. The result is the following final imprint:

With respect to the minute-hand mechanism, it is apparent that during this interval of time the rotating die has traveled the arc of the circle included within the two positions of the pointer; that is, the arc starting with the beginning of the semicircular series of graduations and ending with the graduation in juxtaposition with the pointer. It is also apparent that, if the graduations represent divisions of time into minutes, the period of elapsed time is 17 minutes. To be sure, the pointer on the final imprint does not point to a numeral which indicates the interval of elapsed time, as in the Hamilton device, but it does point to a graduation from which, by reason of the number of five-minute groups included between the two pointers, it can be quickly determined that this is the amount of elapsed time.

So with the seconds-hand imprint, since we know the small portion of the pointer was first printed, we can determine at once, by counting the graduations between this portion of the pointer and the whole pointer, the additional number of seconds which is to be included within the period of elapsed time.

In the defendant's minute-hand mechanism we find the rotating die of the Hamilton invention, also a half-circle of graduations which correspond to the Hamilton numerals; but we do not find Hamilton's separate and independent printing mechanism.

In the defendant's seconds-hand mechanism we find a form of separate or independent printing which resembles in its function that of the Hamilton invention; but we do not find the Hamilton rotating die with its pointer in juxtaposition with the zero numeral, or, what is the equivalent, with the beginning of a series of graduations.

We may now turn to a more specific examination of the Hamilton patent and the claim in issue. The specification says:

"I, Emery M. Hamilton, * * * have invented certain new and useful improvements in apparatus for recording measurements of time, space or quantity. * * *

"The object of this invention is to enable measurements of time, space, or quantity to be easily and quickly recorded by automatically-changing mechanism; and to this end such invention consists in the construction and combination of parts constituting my device, substantially as and for the purpose hereinafter specified."

Here follows a description of the printing mechanism, including the die. The specification describes the operation of the machine as follows:

"Suppose that an operative is to receive ten cents per hour for his time, and that he reports for duty at 9 a. m. A card or ticket, O, preferably having the name of the operative, is placed in position for printing against the guide-strip, M, and both of the platens, g and h, are pressed downward, so as to print upon the lower face of said ticket a facsimile impression of the numerals and arrowhead of the die, E, with the arrow-head at, O (zero), as shown in Fig. 6, after which such ticket so stamped is given to the operative as his voucher. When the operator quits work—say at 5 p. m.—he presents his ticket for completion, when it is placed in the exact position it before occupied, and the platen, h, is pressed downward so as to cause the arrow-head alone to be printed upon said ticket; but as during the interval of eight hours said die will have made eight-tenths (8/10) of a revolution the second point of said arrow-head will be opposite to the numeral 80, which will represent the exact number of cents due for eight hours' work at ten cents per hour. The ticket thus stamped is paid by the cashier and then becomes his voucher for the amount disbursed."

The specification proceeds:

"It will be obvious that any desired number or order of figures may be cut upon the printing-die, so as to cause its impressions to represent hours and fractions of hours, etc., instead of dollars or fractions of dollars; the principle of operation being the same in each instance. * * * This mechanism is equally adapted for keeping the accounts of any number of billiard tables, bowling alleys, etc., as the pointer or arrow-head is always at zero when the first impression is taken, and when a second impression is taken of said arrow-head its change of position will cause the printed record to show either the exact amount of time which has passed since the first impression was taken or the equivalent of such time in fractions of a dollar as may have been predetermined."

The first claim reads as follows:

"(1) A machine for measuring and recording intervals of time, in which are combined a rotatable printing-die that is provided with an annular series of progressive numerals-type and with a pointer-type which is in juxtaposition with the zero-numeral of the series, mechanism whereby said die may be rotated at a uniform velocity, and mechanism whereby the numerals-type and pointer-type may be separately printed upon a ticket, substantially as and for the purpose specified."

This claim covers an elapsed-time printing machine in which the two novel and essential elements are, first, the rotating die with its series of progressive numerals-type and its pointer-type in juxtaposition with the zero numeral; and, second, "mechanism whereby the numerals-type and pointer-type may be separately printed upon a ticket." The specific elements of the claim are as follows:

(1) A rotatable printing die provided with an annular series of progressive numerals.

(2) A pointer-type in juxtaposition with the zero numeral of the series.

(3) Mechanism for rotating the die at a uniform velocity.

(4) Printing mechanism whereby. the numerals-type and pointer-type may be separately printed upon a ticket.

The defendant's minute-hand mechanism contains the first three elements of this claim, or their mechanical equivalents, since it is clear that the semicircular series of graduations, with the pointer in juxtaposition with the beginning of the series, is the equivalent of the Hamilton annular series of progressive numerals with the pointer in juxtaposition with the zero numeral. The infringement of this claim turns upon the fourth element; in other words, it turns upon the answer to the question, Does the defendant's minute-hand mechanism embody "mechanism whereby the numerals-type and pointer-type may be separately printed upon a ticket"? "Separately printed" means independently printed. An analysis of the Hamilton invention and the language of the specification forbids giving these words any other construction than their natural and ordinary signification. Since in the defendant's minute-hand mechanism there is no separate printing of the graduations and the pointer, but only the successive printing of all the dies, that mechanism does not come within the terms of this claim. Nor can these printing mechanisms be held to be the equivalent of each other, for the reason that the successive superimposed printing from both dies, which characterizes the defendant's machine, was the very thing which Hamilton not only sought to avoid, but which he must avoid in order to print an intelligible record. The originality of the Hamilton invention resides as much in his ingenious form of printing as in his die, and no apparatus infringes the claims of the Hamilton patent which does not have the essential features of these two elements, or their mechanical equivalents.

The same line of reasoning applies with equal force to the defendant's seconds-hand mechanism, since there is absent from this mechanism the Hamilton die, which is made the first element of claim 1. The defendant's stationary die with its circle of graduations is simply a die in the form of the seconds-hand disc of a watch, and it is in no sense the equivalent of the Hamilton die.

The defendant's minute-hand mechanism does not infringe the first claim of the Hamilton patent, because it does not have the Hamilton separate-printing mechanism. The defendant's seconds-hand mechanism does not infringe this claim, because it does not have the Hamilton die.

It is true that Hamilton was the first inventor of a time-printing machine for directly measuring and recording intervals of time. It is also true that for this reason his patent should be liberally construed. But, at the same time, we know of no rule of construction which will permit the court to hold a machine to be an infringement of that patent which does not contain the original and vital elements of the invention, in a suit in which the claim of the patent relied

upon expressly makes these elements a part of the combination covered by the claim.

The Abbott patent in suit, No. 583,320, is for the Calculagraph, a printing machine which embodies the combination in a single machine of the Hamilton device and the old-time stamp. The following diagrams taken from the patent illustrate the machine and the initial and final imprints which constitute the record:

In the first of these record diagrams we have the imprint of the time of day and the first of the two impressions made by the Hamilton device. In the second of these diagrams we have the last or pointer imprint of the Hamilton device.

The mode of operation of the Calculagraph is as follows:

Having placed the card to be printed in position in the machine, the operator pushes the right-hand lever forward or away from him, thereby causing the time-stamp to print upon the card the time of day; he next pulls this lever towards him, thereby making the first of the two Hamilton imprints, namely, the numerals; he next pulls the left-hand lever towards him, thereby making the final Hamilton imprint of the pointer, which completes the record. It will be noted that the right-hand lever is in fact two bent levers with a single fulcrum and one long arm in the form of a handle. It will also be noted that there are three independent operations of these levers, and that different dies are printed from at each operation. To illustrate this, suppose we remove the levers from the machine, and place a knob (like the old time-stamp) on the end of each of the pins or projections which co-operate with the levers, it is apparent that when we push down the first knob with the hand we will print the time of day, that depressing the second knob will give us the imprint of the Hamilton numerals, and that the same operation with the third knob will produce the Hamilton pointers. These levers are simply a better and more convenient means for making three separate imprints from different sets of dies. Upon this point the specification says:

"The employment of a pivoted handle or lever to depress the rod, O', instead of striking or pounding upon the same with the hand, the usual manner in mechanism of this description, is of decided advantage, as the disagreeable and sometimes painful effect on the operator's hand and the noise and jar incident to the striking or pounding are wholly obviated. The avoidance of noise is quite an important consideration when, for instance, the apparatus is employed in telephone exchanges, and of course it is desirable to obviate the jarring because of its injurious effect upon the machine itself, and also upon other mechanism that might happen to be upon the same support or table therewith. Furthermore, by reason of the even gentle pressure, instead of the sudden violent blow imparted by the old construction, a cleaner and better impression, free from blurring, is obtained."

The first two claims, which are the only claims in issue, read as follows:

"(1) In a machine for making printed records, the combination of dies for printing the record of intervals, dies for printing the time of day, a single motor for driving both sets of dies, and a lever adapted by alternate movements to cause impressions to be made from both sets of dies, substantially as and for the purpose specified.

"(2) The combination of mechanism for measuring and recording intervals, comprising dial and pointer dies, time of day dies, a single lever for actuating the latter, and certain of the former, means for actuating the die or dies not actuated by said lever, and a single motor for driving all of said dies, substantially as and for the purpose set forth."

The first claim calls for "a lever adapted by alternate movements to cause impressions to be made from both sets of dies." This language, as applied to the actual invention covered by the patent, is vague and uncertain. There is no lever in the patented structure which is adapted by its alternate movement to make impressions

from both sets of dies. The lever here referred to is evidently the right-hand lever, which, by its alternate movements, only makes impressions from one set of dies and a part of the other set. There is no lever described in the specification which by its alternate movement causes the printing of a complete record.

The second claim calls for a lever for actuating the time of day dies and a portion of the elapsed-time dies; that is, the numerals and means for actuating the remaining dies, that is, the pointer-dies.

The scope of the real invention covered by these claims is narrow. If it were not that both sets of dies are driven by a single motor built upon the ordinary clock mechanism, it is doubtful if we could escape the conclusion that these claims are for mere aggregations. At all events, these claims must be limited to independent sets of dies which are independently operated by levers. The dies in the defendant's machine are so organized that they are not divided into independent sets, and consequently they do not require in their operation the levers of the Abbott patent. In the printing of the time of day dies and the minutes elapsed-time dies, the defendant employs a single lever. This lever by a movement in one direction operates all of these dies, thereby making the first imprint, and by a successive movement in the same direction again operates all these dies, thereby making the final imprint.

In the printing of the seconds-hand dies the defendant uses an additional secondary lever, which is operated by a push-button attached to the main lever already mentioned. When the main lever is moved in one direction, in addition to printing the time of day dies and the minute-hand elapsed-time dies, it also prints the seconds-hand stationary die and a part of the pointer-die. When the lever is again moved in the same direction and at the same time the push-button is pressed, all the dies are again printed, together with the whole of the seconds pointer-die. In other words, the only function performed by this secondary lever is to cause the printing of the whole of the seconds-pointer upon the final imprint. The main lever in the defendant's machine does not correspond to either lever of the Abbott patent, and there is nothing in the use of the secondary lever, in combination with the main lever, which brings the defendant's mechanism within either claim 1 or claim 2 of that patent in view of the narrow range of the Abbott invention.

The fact that the Calculagraph has proved of great utility in timing long-distance telephone messages would have an important bearing on the question of the patentability of the Abbott apparatus, if that question were doubtful; but, under a well-settled rule, mere utility cannot serve to enlarge the scope of the Abbott invention, which, as we have already said, is limited to the structure disclosed in the patent.

Upon full consideration, we are of the opinion that the defendant's machine does not infringe claim 1 of the Hamilton patent, or either claim 1 or claim 2 of the Abbott patent.

The decree of the Circuit Court is reversed, and the case is remanded to that court with directions to dismiss the bill, with costs; and the appellant recovers costs of his appeal.